Thank you, Your Honor. I'd like to reserve four minutes for rebuttal, if I may. The circumstances in this case have changed dramatically since the start of this appeal. Last month, in October, H&R Block exited the IRS Free File Program, which is at the very heart of this case. That development means that Mr. Snarr no longer has standing to sue, but he has a public injunction that would change the way in which H&R Block offers its version of the IRS Free File Program to its customers. And the simple reason for that is because H&R Block is not going to offer any version of the IRS Free File Program to its customers. This court explained in Davidson v. Kimberly-Clark that a plaintiff seeking injunction must show that he or she faces a threatened injury that is certainly impending. Specifically, the plaintiff must show a sufficient likelihood that he will again be wronged in a similar way. Now, that's not something that Mr. Snarr is going to be able to show. The whole point of his injunctive request is to alter the manner in which H&R Block offers its version of the IRS Free File Program. And that is made clear in his prayer for relief in the operative amended complaint at excerpts of record 128 to 30. So let me interrupt you and ask you, why is this an issue that the district court should address in the first instance on a fully developed evidentiary record? Well, Your Honor, I don't think we have an objection to a vacator of the order denying the arbitration motion so it can be sent back to have that resolved. You know, we think it's pretty plain that since we no longer are involved in the practice that is challenged that you could reverse on that ground. But we also agree that given the development and understanding that it happened in the midst of the appeal, that remanding it for further development is appropriate. Or another argument. I mean, these voluntary cessation questions are often sort of fact-intensive. It just seems that it's a little difficult for us to include that on appeal. And also, it's one step removed from Article 3 mootness or standing because you got the rest of the case going on. Well, I think that's right. I guess what I would say is that it's clear that as a matter of Article 3 standing, they don't lack Article 3 standing over the entirety of their claims. But the premise of the denial of the arbitration motion was the holding that there is a live request for a public injunction. Now, we don't think that the injunction is public for the reasons explained in the brief. But the threshold question before you even get there is, is there standing? And that's a question that gets asked throughout a litigation. And so I agree with you, Chief Judge Thomas, that that is a question that has to be answered, has to be answered first. And once answered, we believe will lead to a holding that there isn't a standing to pursue an injunction and therefore would lead to a new conclusion on the arbitration issue. Go ahead. Proceed. So, you know, and I think I'll try to push forward on this point, which I think is a significant point that because I, you know, I'm not sure what my friend on the other side will say. Perhaps he'll contend that the claim is still alive. But in our view, we don't think that Mr. Starr can show that that there is something to enjoy going forward because of our lack of participation in this program. We think this is clear from the Davidson case. Davidson pointed to, it distinguished the Nicosia versus Amazon case in holding that when a business stops, this is what the Nicosia case, the Second Circuit case said, stops offering a product or service, then an injunction aimed at that product or service is one that the plaintiff lacks standing to see. In footnote five of Davidson, Davidson distinguished Nicosia, but in part that was because the flushable wipes that were at issue in that case that were being sold. If Kimberly Clark had stopped selling them, then Davidson would have lacked standing to seek an injunction. And our... My question is this, with regard to the mootness. There are some allegations in the complaint and some provisions in the injunction, I believe, that don't depend on what's being called the true free file off, i.e. the IRS-related system, but rather HRB's own representations of free service non-connected to the IRS. So, is that correct that there are some allegations that are not tied into the national program? Yeah, Your Honor, I respectfully disagree with that. I appreciate the question. I have a question. There's nothing to disagree with him. Then let me try to directly answer the question, Your Honor. Our view of this request for injunction and the place to look exerpts a record 128 to 130. There are six components to the public injunction, and a number of them refer specifically to... What I want to know is the question, what's in the complaint or what's in the injunction? So, I might not be understanding the question, Your Honor, but let me try and step back and see if this is helpful to the court. The injunction request, based on what is in the operative complaint, is tied directly to H&R Block's participation in the IRS free file program. The complaint does refer, I should say, 125 times at least to the quote-unquote true free file service, which is how my opponents have described our version of the IRS free file program. There are parts of the request for an injunction, parts of the complaint that talk about what they website, but that word competing plays an exceptionally important role because competing has a meaning there. It means relative to what, and what it's relative to is our version of the IRS free file program. In fact, there are no aspects of the request for an injunction that don't talk about either quote-unquote true free file service or the competing free service or what service. They use, and I respect them for it, colorful versions that you might characterize as plain and friendly, but when they talk about the bait-and-switch service or bait-and-switch tactic, which they say, I think, about 80 times in the complaint at least, they are referring to the competition between H&R Block's version of the free file service and the competing service. Absent that competition, it's a different case. It's an entirely different case, and there's nothing to enjoy. Or there might be, but we don't know. Well, I think to that point, and I want to be fair to the other side, this development happened in June. June is when we announced it to the public. They filed their brief shortly thereafter. The first time we were able to talk about it, we talked about it in our reply. I know we filed a brief, our supplemental Rule 28J letter about the Stover case last week. I take it that Mr. Robb didn't have a chance to respond, but so I guess we don't know what they're going to say. I'm sure they will want to find some way to keep the case afloat, but I think to the question that Chief simple solution would be to send it back so that this can be aired before the district judge. I think because our attack on whether there is standing to bring the injunction would be under 12B1, it is established that you can introduce evidence to support questions about subject matter jurisdiction. We would, for example, introduce evidence that we, as I say, we have exited the program, that we cannot return without the approval of the IRS, that we cannot return without the approval of other members of the Free File Alliance, our competitors in the marketplace. Do you want to address the merits? You have about two minutes left. Yeah, well, I think, yes, I will very briefly. If there were somehow standing, we think that the McGill rule doesn't apply because their claim is not a claim for a public injunction. I know that the plaintiffs have argued, or the plaintiff, I should say, has argued that Blair is controlling here, but footnote three of Blair does not create a categorical approach that anytime somebody brings a claim under the UCL or CLA for an injunction, that it's automatically a public injunction. McGill court made that absolutely clear. It talked about when relief has the primary effect of redressing or preventing injury to the plaintiff or a group of plaintiffs similarly situated to that individual, then it's private relief, not public relief. And so there has to be something more than the ordinary class action, something that reaches the general public as a whole. And if there's one thing we know about the IRS Free File Program, one that we're not involved in anymore, it is that it is not open to the general public as a whole, that it has specific criteria, both from the IRS and from our former offering, that can offer large numbers of people. And that differentiates it from Blair, in which the rent-a-center offerings were available to all comers, and from McGill, where the credit protection program was available to all comers. There wasn't something opposing off of that right. And finally, I would mention that in the EnBank decision in Kilgore, the, this court said that, that one, that you looked at the, the court would have to look at this in an individualized way. And significantly, the court recognized that where the bank was no longer offering the loan property issue, then that militated against the holding that there was a public injunction. You're down to about four minutes. Do you want to reserve? Yes, I do. Thank you. Thank you so much, Stephen Robb of GoatRide Saphir for Plaintiff Appellee Derrick Snarr. The only issue that was properly presented on this bill is the question of whether plaintiff is seeking a public injunction. Because so much time was spent on the mootness argument, I would just like to address that first, to note that it was not properly raised. It was never presented to the district court. There are no facts in the record that appellants are citing to all the facts they do cite. Very few of them are outside the record and have not been tested. And they did just bring it up in their reply brief, even on this appeal. All of that is contrary to numerous precedents of the court in terms of issues to be considered and decided. So the only, I do not think that decision, that issue can be resolved in appellant's favor for those reasons. However, it is possible that the court could reject that argument as a dead end. That is, even assuming that H&R Block exited the free file program, that still does not moot the injunctive relief in this case. Appellants are ignoring critical aspects of the injunctive relief they requested. And they did cite to the correct portions of the record where we injunctive relief. But I do not think they read very carefully portions A2D or A3. In those sections of the request for relief, we are looking, well, maybe I can characterize the allegations. The allegations are that defendants know that millions of taxpayers every year are seeking free filing, that the vast majority of taxpayers are eligible for free filing, and that there are many services that offer free filing. Knowing that, they still aggressively market free filing, trying to draw as many people to their website as possible. We call it a bait and switch. Regardless of whether people actually qualify in the end for H&R Block's limited free file offer, either the commercial version or their version of the IRS free file offer, which we call the true free offer, there are people who are still being misled and pulled in. And the intent of that is to get them to spend time entering the system and begin entering their information. The other aspect of the injunctive relief is to make sure that defendants not only stop with that misleading marketing and make sure that they're much more upfront with the qualifications and the limited nature of their free offer, but also that they notify people at this practical point that they are not eligible for the offer. Excuse me. I understand that there are pieces of their request for relief that could be freestanding, even if they're not participating in the IRS related system, like section, like number three and maybe number six. But the basic underlying wrong, as I understand it, is that they were confusing people with regard to the differences or the availability of what you call the true free file service and any other free, supposedly free surfacing issue. And if that's not a viable problem anymore, then whatever, then your injunction request would be standing on top of a vacuum, basically. I mean, we have no idea how they're going to operate when there is no longer an integration with the IRS system. Well, I disagree with that, Your Honor. I believe that we do have a sense that they will continue as their commercial free filing effort in search results, in TV, in radio, in multiple ways, in Google search results, with the intention of trying to get people to visit their website. That is even now, without the possibility of people filing for the IRS free file offer through H&R Block. There are still 70% of the taxpayers who are eligible for that IRS free file offer. Many people know that free filing exists and is available and that they probably qualify. And so they can be misled into coming to the H&R Block website. Those people are still affected. They may still start entering information and become H&R Block customers or fill out an account and go so far down the road before they realize, wait, this is not the offer I was looking for. And that remains true, even if H&R Block has withdrawn from the IRS program. They're still trying to capture people who should be eligible, who are looking for that opportunity to file for free. And they're trying to extract money from them. And our junction seeks to remedy that fact, even if H&R Block does not participate. It is true that certainly the damages aspect of the case, which we clearly still have standing for in our mood, are very much focused on those who would qualify for H&R Block's free file offer, because those people are told, no, you do not qualify for free filing, you have to pay. And we're saying that that is incorrect. H&R Block knows that those people can file for free with H&R Block and are telling them they have to pay. But that is a little bit different from the public injunction going forward, which has much broader effect. Moreover, defendants have shown multiple offers at the same time. They've done it with two free offers. So it's very much clear that defendants can at any point offer something, take it away, and repeat their activity. There's absolutely no assurance or barrier to them continuing to do something very similar, if not the same thing in the future. Going to what I consider the merits on the main issue on this appeal. I would like to emphasize just how extreme and dangerous appellant's position is with respect to what constitutes a public injunction. Under their theory, prohibiting tobacco companies from targeting children would not qualify as a public injunction, because it would be protecting primarily children. An order enforcing the rights of disabled citizens would not be for the benefit of everyone in the general public. An order stopping discrimination on the basis of race or gender or religion would not be a public injunction. Defendants can always argue that an injunction will primarily benefit some subset of the population. That, of course, is an unreasonable and self-serving view of what it means to benefit the general public. But the critical point is that this is not just about language and academic dispute about terms. If appellants have their way, then companies can completely eliminate these forms of relief. A consumer cannot pursue or request such an injunction, either in court or from an arbitrator, because under California law, a consumer cannot waive the right to a public injunction. But if these types of subjects are not public injunctions, if public injunctions are as rare as unicorns, then they can be deemed waived by companies with a few keystrokes in a form agreement or in terms of use that no one reads until it is too late. In short, they're implying that companies have an automatic veto or can simply exempt themselves from California law, and the courts should reject that. I'm sorry, was there a question? No, I don't think so. Okay. This court in Blair and the California Supreme Court in McGill both made it clear that injunctive relief of the types sought here under the California Consumer Protection Statutes is primarily for the benefit of the general public. In fact, in Blair, the appellant argued that an order requiring the defendant to stop engaging in unlawful pricing practices targeting vulnerable consumers was not a public injunction, and the court rejected that firmly. In footnote three, it said, not so. Blair seeks to enjoin future violations of California's Consumer Protection Statutes, relief-oriented to and for the benefit of the general public. Here, just as in McGill and in Blair, plaintiffs seek public injunctive relief because they're seeking to stop defendants from deceptive and that are widely broadcast, and also requiring defendants to provide full, truthful, and prompt disclosures to consumers about their eligibility for free filing. Defendants suggest that is limited to a small group of their customers, but that is not true. First of all, even if the injunctive relief was primarily for the benefit of H&R Block consumers, that would not distinguish this case from either Blair or McGill. But secondly, the public injunction is broader than that, as I mentioned. When you look at the request for relief, paragraphs 2D and paragraph 3, we are concerned with the broad marketing practices affecting the public and misleading people who are entitled to and who are seeking free filing. These are the reasons. There are a large and indeterminate number of taxpayers, millions, who could benefit from this injunction. To argue that this is not a public injunction would mean that there are almost no public injunctions, and that is a scary thought. I believe there are at least a few factors that go into deciding in a particular case whether relief is public or private. I do not believe distinguishing public and private injunctions is capable of specificity with precision, but I do believe if you think about the distinction between a limited set of people in an established or pre-existing or paid contractual relationship with defendants, which occurs in a few of the cases where companies might impose charges or misuse information of existing paying account holders, that would be a factor in favor of finding a private injunction versus public, as compared to broad marketing or public websites of the kind at issue here, which favors the finding that it's public. The court might also consider whether there's a statute indicating that the injunction is a matter of public interest. Is it clear that the injunction contains services or goods of public importance? Here, the consumer protection statutes, as multiple courts have found, do indicate there's a public interest in these matters. In short, defendants have offered no clear case showing that anything comparable to the situation here would not be a public injunction. The other cases that defendants mentioned on their opening brief were also resolved in Blair, and I believe are binding on this court, and defendants have conceded that in terms of that there's no preemption under the FAA and there's no severability. I think we understand your position. Okay, thank you, Your Honor. Thank you, counsel. Rebuttal? Thank you, Your Honor. I think there are two pieces to this. I could tell from the court's questions that the questions were largely directed at the question of standing, so I'll just try and respond very briefly. The suggestion that standing isn't properly presented makes no sense. You're talking about standing rather than mootness, and this seems to me to be mootness not standing, and that there is a fairly severe presumption or narrow track for mootness on appeal. It's different from standing in that regard. Is that not true? The courts have drawn distinctions between mootness and standing. It's popularly said, including by the Supreme Court, that mootness is standing in a time frame. There's no doubt, though, that there has to be some reason to believe that the conduct challenge will recur for there to be standing to challenge conduct that has ceased. Why isn't this in the category of voluntary cessation, basically? Well, what do we know about whether you could just go back and do it again? So what we know, and this is in the record at Section 143, this is Section 4.3.2 of the Memorandum of Understanding that governs the relationship between the IRS and the Free File Alliance, is that once someone has exited, they would have to become a new member again, and that requires IRS approval. So it's not like we can just... You're HR block. It's not as if you're some little upstart. So the notion that you wouldn't get approved is a little far-fetched, no? Well, one of the questions that is raised is whether the IRS thinks that we're going to follow its directives. The plaintiffs here would say that we haven't been. Now, I disagree with that. I think we've been in compliance with the Memorandum of our control. We are not solely able to flip on and off the switch. There is a, how to put it, a significant speed bump, if not set of speed bumps. And this isn't in the record, which is a reason that we should develop it on remand. But there's also an agreement that governs the Free File Alliance that would require the approval of the executive director of the Free File Alliance. And so I don't think that it is, to respond to that question, even close to a foregone conclusion, quite the opposite. I think there are serious doubts that we could resume doing this. And I think that really underscores the need to get, to have the district court consider evidence on this question. Because as the Chief Judge pointed out, this is often a question that is, and I think Judge Schroeder may have said this, also a question that is fact-specific, that requires analysis of evidence. And we think it's clear, but if the court has questions about it, then in our view, the proper course is to send it back. And I know at the risk of citing an unpublished opinion, I'll just say as guidance or perhaps a point of reference, but in the Delisle v. Speedy Cash case, where something changed on appeal that caused real, in the court's words, questionable whether there would be standing going forward to pursue the injunction, this court, another panel of this court, remanded the case for the district court to consider the issues. And I'll just say, because I know I'm running out of time, that on the theories that were presented here, it does seem like a brand new lawsuit, a different complaint. It can't be squared with what's in the complaint. And to me, that means that if what the plaintiff is looking to do is to change their theory, that's an issue best presented to the district court in the first instance. Okay. Thank you for your argument. The case just arguably submitted for decision, and we'll be in recess for the afternoon. Thank you, Ron.
judges: Schroeder, Thomas, Berzon